United States District Court
Southern District of Texas
**ENTERED**
March 18, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **DANA BAILEY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:20-CV-00059** |
| | § | |
| **KS MANAGEMENT SERVICES, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Dana Bailey started working for KS Management Services, LLC ("KSM") as a Registered Nurse ("RN") at forty-nine years of age. She rose through the ranks and eventually was promoted to Nurse Coordinator. Later, however, Bailey alleged that her supervisor and manager—Tara Barron and James Johnson, respectively—began to belittle and humiliate her. After enduring this for some time, Bailey decided that she'd had enough. She resigned as Nurse Coordinator and transferred back to being an RN. Before stepping down, however, Bailey made a medical-administration error and was caught sleeping on the job.

An RN again, Bailey filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), contending that she had suffered age discrimination and retaliation. But after filing this charge, Bailey made a second medical-administration error. Because of this error, KSM reported Bailey to the Texas Board of Nursing, which agreed that Bailey had erred. Consequently, KSM fired Bailey in March 2019.

On January 7, 2020, Bailey sued KSM, alleging age discrimination and retaliation under the Age Discrimination in Employment Act of 1967 ("ADEA").  KSM now moves for summary judgment on both the age-discrimination and retaliation claims.  (Dkt. No. 57).  After careful review of the Motion, the Response, the record, and the applicable law, the Court **GRANTS** the Motion.

## I.    BACKGROUND[1]

Bailey started working for KSM as an RN in March 2014.  (Dkt. No. 57-1 at 2).  She was forty-nine.  (*Id*.).  Two years later, she became the Nurse Coordinator, a role with better pay and greater responsibilities.  (*See id.* at 2–3).  But the new role also brought some unwelcome changes.  Bailey contends that her supervisor, Tara Barron, and manager, James Johnson, constantly belittled and humiliated her in front of coworkers and patients.  (Dkt. No. 59-1 at 3).  She further contends that Barron and Johnson would "treat other younger employees more favorably," and "fabricate reasons to reprimand [her]."  (*Id*.).

After a little more than a year, Bailey filed a complaint, in which she discussed Barron's alleged behavior and "favoritism of the younger RNs."  (*Id*.).  Bailey detailed how Barron would "ostracize[] and embarrass[]" her, keep critical information from her that would help her "run the unit fairly and efficiently," "undermine[]" and "usurp[]"

---

[1]    Except where noted, this Section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant.  *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020).  The Court has not weighed evidence or made credibility findings.  *Id.*

her, "intrude[] upon every conversation," "hound[]" her about her time, and "'clock[] [her] out' while [she] was still working." (Dkt. No. 57-1 at 12).

Members from KSM's human resources department met with Bailey and the other RNs about the issue. (Dkt. No. 59-1 at 3). During these meetings, Bailey spoke of "the constant berating, intimidating, and bullying" from Barron and "how this type of treatment was done to [her] because of [her] age." (*Id.*). She discussed how Barron undermined her and showed "favoritism" to the younger RNs by reassigning younger RNs who received an unwanted assignment from Bailey. (*Id.*). Bailey addressed how Barron would "take [her] phone away," "purposefully assign the more difficult patients" to her, and "assign the less difficult patients" to Barron's "favored, younger RNs." (*Id.*). Bailey further complained of how Barron would "constantly reprimand [her] for not clocking in or out precisely on time, but would allow the younger R[N]s to come in late and leave early." (*Id.* at 3–4). Bailey even claimed that Barron would invite only younger RNs to leave work early for "Team Building Exercises" but wouldn't invite Bailey or "other older RNs." (*Id.* at 4).

After the human resources department finished its investigation, Barron received a note in her employee file for her behavior. (*Id.*). But "this only made things worse." (*Id.*). Bailey contends that Barron "continued to fabricate allegations" about Bailey and even "reassigned" the phone that Bailey used to make staffing assignments only to lie about receiving multiple reports of inappropriate assignments. (*Id.* at 3–4).

Bailey voiced her concerns during a meeting she had with Barron and Johnson in December 2017. (*Id.* at 4–5). She states that Johnson responded to Bailey's concerns by

"increas[ing] [her] duties as Nurse Coordinator to include an impossible amount of new duties and responsibilities that had never been expected of any other Nurse Coordinator," such as conducting weekly meetings and creating weekly agendas that Barron had to approve. (*Id.*).

Later, however, Bailey was involved in a medical incident at work. Bailey decided to administer a narcotic pain medication to a patient because the patient's pain "was escalating so fast." (*Id.* at 5–6). But before Bailey retrieved and administered the narcotics, Barron began to "berate and yell" at Bailey in front of the patient and directed Bailey to administer Tylenol and Toradol instead of the narcotics because Barron wanted to "get the patient out as soon as possible," (*id.*), and use "less harmful interventions" instead of "go[ing] straight to a narcotic," (Dkt. No. 57-4 at 5–7). The patient received Toradol and Tylenol, which lowered his pain levels and resulted in KSM discharging him shortly after. (*Id.* at 6).

About a month later, Bailey received an Employee Counseling Record ("ECR") for sleeping on the job on two occasions. (Dkt. No. 59-1 at 6). The ECR came after several staff members and a physician reported that Bailey was sleeping on the job and took pictures as proof. (Dkt. No. 57-4 at 22); (*see also* Dkt. No. 57-1 at 20). Bailey disputes these allegations and asserts that these reports are "completely fabricated" and "complete lie[s]" that were "just another act of discrimination and retaliation." (Dkt. No. 59-1 at 6). Bailey claims that she "was never sleeping on the job." (*Id.*).

Bailey eventually resigned from the Nurse Coordinator position and transferred back to an RN role. (*Id.* at 7); (*see also* Dkt. No. 57-2 at 1). She filed a charge with the EEOC, citing age discrimination and retaliation. (Dkt. No. 59-10).

About four months later, Bailey was involved in another medical incident. The incident began when a patient was transferred from the operating room to the recovery room. (Dkt. No. 59-1 at 7). Bailey learned that the patient had a history of "vagaling," (*id.* at 7–8), a condition in which a person nearly or actually passes out after a drop in blood pressure and heart rate, (Dkt. No. 59-12 at 98–99).

As the patient was about to be discharged, he had a vagal response and almost passed out. (Dkt. No. 59-1 at 8). Bailey tried to treat the patient and called in a code for assistance. (*Id.*). But the patient's pulse began to increase. (*Id.*). At that time, Barron arrived on the scene and—according to Bailey—began yelling at Bailey. (*Id.*). Barron then stayed at the patient's bedside and allegedly "micromanag[ed]" Bailey's every step. (*Id.*).

After about two hours, the patient began complaining about pain. (*Id.*). Bailey responded by calling a doctor and receiving an order for 30mg of Toradol IV and 30mg of Toradol IM. (*Id.*). Then, Barron purportedly took Bailey's computer and violated protocol by entering the order in the system under Bailey's name. (*Id.*).

Typically, a patient should only receive 30mg of Toradol IV every six hours. (Dkt. No. 57-1 at 32). But Bailey contends that because no one informed her that the patient had already received 30mg of Toradol IV, (Dkt. No. 59-1 at 7–8), she administered another

30mg, (Dkt. No. 57-1 at 32).  Despite the overdose, Bailey discharged the patient in a stable condition about an hour later.  (Dkt. No. 59-1 at 8).

Nevertheless, Bailey received an ECR in March 2019 because of this medication error.  (Dkt. No. 57-1 at 32–33).  As required by law, Tex. Occ. Code § 301.405(b),[2] KSM reported Bailey to the Texas Board of Nursing, (Dkt. No. 59-1 at 9), and on March 8, 2019, KSM fired her.  (Dkt. No. 57-3 at 12).  Afterward, the Texas Board of Nursing concluded that Bailey's conduct violated state law, "unnecessarily exposed the patient to risk of adverse effects from Toradol administered in excess amount and frequency of prescribing guidelines," (*id.* at 14), and "constitute[d] grounds for corrective action," (*id.* at 15).

On January 7, 2020, Bailey sued KSM, alleging age discrimination and retaliation under the ADEA.  (Dkt. No. 1 at 8–9).  Judge Lynn N. Hughes, then presiding, granted KSM's summary-judgment motion.  (*See* Dkt. Nos. 34, 35).  The Fifth Circuit reversed, finding that the district court abused its discretion by not allowing Bailey to conduct sufficient discovery.  (Dkt. No. 42).  The case was later reassigned to the undersigned.  (*See* Dkt. No. 51).  With discovery complete, KSM now moves for summary judgment on all of Bailey's claims.  (Dkt. No. 57).

---

    2    Under the Nursing Practice Act, "a health care facility" that takes disciplinary action against a nurse "because the nurse engaged in conduct subject to reporting *shall* report in writing to the board."  Tex. Occ. Code § 301.405(a)(1), (b) (emphasis added); Tex. Occ. Code § 301.401(1) (defining "conduct subject to reporting" to include conduct indicating "that the nurse lacks knowledge, skill, judgment, or conscientiousness to such an extent that the nurse's continued practice of nursing could reasonably be expected to pose a risk of harm to a patient or another person, regardless of whether the conduct consists of a single incident or a pattern of behavior").

## II.    LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under governing law. *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *EEOC v. LHC Grp., Inc.*, 773

F.3d 688, 694 (5th Cir. 2014) (quoting *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553). "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)), *as revised* (July 14, 2017). If evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## III.    DISCUSSION

Turning to the merits, the Court will address Bailey's age-discrimination claim first, followed by her retaliation claim.

### A.    BAILEY'S AGE-DISCRIMINATION CLAIM

Bailey brings an age-discrimination claim under the ADEA. The ADEA applies to "individuals who are at least 40 years of age," 29 U.S.C. § 631(a), and "prohibits employers from firing, refusing to hire, or otherwise discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of her age," *Allen v. U.S. Postal Serv.*, 63 F.4th 292, 300 (5th Cir. 2023)

(citing 29 U.S.C. § 623(a)(1)). "A plaintiff can establish age discrimination through direct or circumstantial evidence." *Kelly v. Costco Wholesale Corp.*, 632 F.App'x 779, 782 (5th Cir. 2015) (per curiam). But "claims brought under the ADEA typically rely on circumstantial evidence." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015). After all, "there will seldom be eyewitness testimony as to the employer's mental processes." *Id.* (quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 141, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000)).

Courts generally review circumstantial evidence discrimination claims under the *McDonnell Douglas* burden-shifting paradigm. *Allen*, 63 F.4th at 300. Under this framework, a plaintiff must first establish her prima facie case. *Id.* at 301. If the employee does, "the burden shifts to [the employer] to articulate a legitimate, nondiscriminatory reason for [the employee's] termination." *Id.* "If [the employer] does so, the burden shifts back to [the employee] to show that the articulated reason is pretextual." *Id.*

Accordingly, the Court will examine whether (1) Bailey has made a prima facie case of discrimination; (2) KSM's proffered reasons for terminating Bailey were legitimate and nondiscriminatory; and (3) KSM's reasons were pretextual.

### 1.    Bailey's Prima Facie Case of Age Discrimination

For a prima facie case, Bailey must show that "(1) she was discharged, (2) she was qualified for the position, (3) she was within the protected class when she was discharged, and (4) she was 'either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of h[er] age.'" *Id.* at 301 (quoting *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010)).

First, Bailey was discharged.  No one disputes that KSM fired Bailey in March 2019. (Dkt. No. 59-1 at 9); (Dkt. No. 57-3 at 12).  While the Parties dispute whether Bailey was constructively discharged when she resigned from the Nurse Coordinator position, *compare* (Dkt. No. 57 at 10–11) *with* (Dkt. No. 59 at 19), district courts "should not evaluate whether each individual event in isolation demonstrated age discrimination when the argument is that the events collectively prove [that] discrimination affected h[er] employment," *Dabbasi v. Motiva Enters., LLC*, 107 F.4th 500, 506 (5th Cir. 2024).  Taken together, Bailey's resignation from the Nurse Coordinator position in March 2018 and her final termination in March 2019 show that KSM discharged her.

Second, Bailey was qualified to be an RN for KSM.  Bailey argues that she was "clearly qualified for the position" because she worked for KSM for five years.  (Dkt. No. 59 at 14).  Bailey's résumé shows that she has years of experience working as an RN.  (*See* Dkt. No. 57-1 at 42–45).  And KSM does not even mention—let alone dispute—Bailey's qualifications.  (*See generally* Dkt. No. 57).

Third, Bailey was a member of the protected class.  The ADEA applies to "individuals who are at least 40 years of age," 29 U.S.C. § 631(a), and Bailey started working for KSM when she was forty-nine, (Dkt. No. 57-1 at 2).  She was therefore within the protected class when she was discharged.

Finally, there is a dispute over whether Bailey was fired *because of* her age.  Unlike Title VII, the ADEA does not recognize a mixed-motive approach.[3]  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175, 129 S.Ct. 2343, 2350, 174 L.Ed.2d 119 (2009).  Instead, a plaintiff must prove that age was the "but-for" cause — meaning it was "the 'reason' that the employer decided to act."  *Id.* at 176, 129 S.Ct. at 2350.  Thus, "[u]nlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor."  *Id.* at 174, 129 S.Ct. at 2349.  The ADEA's "but-for" standard "is more demanding."  *Leal v. McHugh*, 731 F.3d 405, 411 (5th Cir. 2013).

But while the "but-for" standard is stricter, it does not require age to be the *sole* cause of termination.  *Id.* at 415.  A "sole-cause" standard would require proving that age was "[t]he *only* cause that . . . produce[d]" the termination.  *Id.* (emphasis added) (quoting *Sole Cause*, Black's Law Dictionary (9th ed. 2009)).  In contrast, the "but-for" standard only requires showing that "age was the factor that made a difference."  *Id.* (quoting *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010)).  In other words, while age need not be the only factor in the employer's decision, it must be significant enough that, without it, the termination would "not have occurred."  *Id.* (quoting *But-For Cause*, Black's Law Dictionary (9th ed. 2009)).

The Parties dispute why KSM fired Bailey.  KSM argues that Bailey was fired because of the medication errors.  (Dkt. No. 57 at 12–13).  Bailey disagrees, detailing how

---

[3]     In a mixed-motive case, "an employee alleges that he suffered an adverse employment action because of both permissible and impermissible considerations."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 171, 129 S.Ct. 2343, 2347, 174 L.Ed.2d 119 (2009).

Barron was implicated in those medication errors and arguing that KSM discriminated against her because of her age. (*See* Dkt. No. 59 at 14–16); (Dkt. No. 59-1 at 9–10). Based on this summary-judgment record, there is a genuine issue of material fact as to the fourth element.

### 2.   KSM's Legitimate, Nondiscriminatory Reasons

The Court turns now to the second part of the burden-shifting analysis: whether KSM articulated a legitimate, nondiscriminatory reason for firing Bailey. KSM states that it fired Bailey because she made two medical errors and was caught sleeping on the job.[4] *See supra* Section I; (Dkt. No. 57 at 12–13). Bailey does not dispute that KSM "articulated a non-discriminatory reason for its termination for Bailey." (Dkt. No. 59 at 16). Accordingly, the Court finds that KSM's proffered reasons for firing Bailey were legitimate and nondiscriminatory.

### 3.   Pretext for Age Discrimination

The Court now addresses the final stage of the burden-shifting framework: whether Bailey presents enough evidence to show that KSM's articulated reason is a pretext for age discrimination. Generally, "[i]n response to a motion for summary judgment, an employee must present 'substantial evidence' that the employer's legitimate, nondiscriminatory reason for termination is pretextual." *Delaval v. PTech Drilling Tubulars, LLC*, 824 F.3d 476, 480 (5th Cir. 2016) (quoting *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015)). There are two ways to show

---

[4]   Under KSM's policies, sleeping during works hours could lead to termination. (Dkt. No. 57-1 at 102).

pretext: (1) by evidence that the employer's "proffered explanation is false or 'unworthy of credence'" or (2) "through evidence of disparate treatment."    *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (quoting *Jackson*, 602 F.3d at 378–79).  Bailey makes both arguments, contending that (1) she was not completely at fault in the cases of the two medical administration errors, and (2) she has experienced much worse treatment than younger nurses.  (*See* Dkt. No. 59 at 15–17).  Both arguments fail.

a.    <u>The medical administration errors</u>

Bailey first argues that she "did not commit two medication administration errors," and thus KSM's legitimate reason for firing Bailey is "false."  (*Id.* at 16).  Yet, while Bailey alleges that Barron began to "berate and yell" at her in front of the patient and directed her to administer Tylenol and Toradol, Bailey does not dispute that she was going to administer a narcotic pain medication to a patient without first considering a less harmful intervention.  (Dkt. No. 59-1 at 5–6); (*see also* Dkt. No. 57-4 at 5–7).  And even though Bailey detailed several "mitigating circumstances" for the second medication-administration error, she ultimately "t[ook] responsibility" for it, (Dkt. No. 57-3 at 9–11), and did not dispute the Texas Board of Nursing's finding that this error violated state law, "unnecessarily exposed the patient to risk of adverse effects from Toradol administered in excess amount and frequency of prescribing guidelines," (*id.* at 14), and "constitute[d] grounds for corrective action," (*id.* at 15).

"[T]o show that [KSM's] reasons were false, [Bailey] must do more than assert that they are wrong, [s]he 'must produce evidence permitting the jury to disbelieve that [KSM's] proffered reason was its true motivation.'"  *Easley v. Lowndes Cnty.*, No. 21-60136,

2022 WL 39001, at *4 (5th Cir. Jan. 4, 2022) (per curiam) (quoting *Laxton*, 333 F.3d at 579). She has not done so, and her self-serving, conclusory assertion that she "did not commit two medication administration errors," (Dkt. No. 59 at 16), is insufficient to create a genuine issue of material fact on pretext, *see EEOC v. Exxon Shipping Co.*, 745 F.2d 967, 976 (5th Cir. 1984) ("[P]retext cannot be established by mere 'conclusory statements' of a plaintiff who feels [s]he has been discriminated against.").

Even if Bailey demonstrated that she did not commit the medication errors, she needs to show more than KSM fired her based on a mistaken *belief* that she erred; she must demonstrate that KSM fired her because of her *age*. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) ("Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext.").  A mistaken judgment is insufficient to show pretext at the ADEA summary-judgment stage, especially because employers do not enjoy the benefit of hindsight.  *See Horak v. Glazer's Wholesale Drug Co.*, No. 3:05-CV-00901, 2006 WL 2017110, at *7 (N.D. Tex. July 19, 2006) (noting that a plaintiff does not create a genuine issue of material fact even when an employer made the "wrong" decision to terminate the plaintiff), *aff'd*, No. 06-10854, 2007 WL 713154 (5th Cir. Mar. 6, 2007) (per curiam); *see also Lucas v. T-Mobile USA, Inc.*, 217 F.Supp.3d 951, 957 (S.D. Tex. 2016) ("In pretext cases, it is not enough that the [employer] was wrong about the underlying facts that motivated the adverse employment action.  The only question is whether the employer had a good-faith belief that the facts that motivated the adverse action were true.").

Thus, Bailey must show not that KSM fired her because of a mistake, but that it fired her because of her age. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 460 (5th Cir. 2019) ("The ADEA does not 'protect older employees from *erroneous* or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated.'" (emphasis added) (quoting *Moss*, 610 F.3d at 926)); *see also Horak*, 2006 WL 2017110, at *7 ("Employment discrimination laws are not intended to be a vehicle for transforming the courts into personnel managers who second-guess the business decisions of employers." (citing *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)).

While Bailey asserts that KSM's decision to write her up for these incidents *was* unlawfully motivated because KSM wanted to fire her for age-related reasons, (*see* Dkt. No. 59-1 at 8–9), she provides no evidence to support this claim. For example, Bailey has offered no indication that KSM's reasons for firing her have shifted or been inconsistent. *Cf. Miller v. Novo Nordisk, Inc.*, No. 21-20237, 2021 WL 5913095, at *2 (5th Cir. Dec. 14, 2021) (per curiam) ("[A]n employer's shifting reasons for its employment decision can raise an inference of pretext." (citing *Ameristar Airways v. Admin. Rev. Bd.*, 650 F.3d 562, 569 (5th Cir. 2011)). Therefore, her argument regarding KSM's motivation is supported only by her subjective belief that KSM had a discriminatory motive, which is insufficient as a matter of law to show pretext. *See Hills v. St. Luke's Episcopal Health Sys.*, No. 4:08-CV-02329, 2009 WL 10694812, at *9 (S.D. Tex. 2009) ("An employee's subjective belief that she was the victim of discrimination is insufficient to create an inference of discriminatory intent. Conclusory allegations, unsubstantiated assertions, improbable inferences,

unsupported speculation, or only a scintilla of evidence will not carry this burden."

(citing *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 313 (5th Cir. 1999))),

*report and recommendation adopted sub nom. Hills v. St Luke's Episcopal Health Sys.*, 2009 WL

10694832 (S.D. Tex. Dec. 21, 2009); *see also Patel v. Tex. Tech Univ.*, 941 F.3d 743, 748 (5th

Cir. 2019) ("These conclusory allegations cannot create a genuine fact issue sufficient to

defeat summary judgment." (citing *Little*, 37 F.3d at 1075)).  As a result, Bailey's argument

as to her medication-administration errors does not show pretext.

b.    Disparate treatment

Next is Bailey's disparate-treatment argument.  Establishing disparate treatment

requires a showing that the individuals were similarly situated and had circumstances

that are "nearly identical" to a plaintiff's circumstances.  *Keelan v. Majesco Software, Inc.*,

407 F.3d 332, 345 (5th Cir. 2005); *see Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir.

2009) ("[C]ritically, the plaintiff's conduct that drew the adverse employment decision

must have been 'nearly identical' to that of the proffered comparator who allegedly drew

dissimilar employment decisions." (quoting *Perez v. Tex. Dep't of Crim. Just.*, 395 F.3d 206,

213 (5th Cir. 2004)).  This showing requires that they "'(1) held the same job or

responsibilities,' (2) 'shared the same supervisor or had their employment status

determined by the same person,' and (3) 'have essentially comparable violation

histories.'"  *West v. City of Houston*, 960 F.3d 736, 740 (5th Cir. 2020) (quoting *Lee*, 574 F.3d

at 260).

Bailey seems to rely on the younger RNs as her relevant comparators.  (*See* Dkt.

No. 59 at 15).  But if her complaints involve conduct that occurred while she served as

16

Nurse Coordinator, RNs are not appropriate comparators because their roles and responsibilities are different. (*See* Dkt. No. 57-1 at 2–3, 56–58, 114, 117–19) (listing various additional responsibilities that come with a promotion from RN to Nurse Coordinator). Accordingly, any claim based on discriminatory acts that she experienced as Nurse Coordinator does not establish disparate treatment because Bailey did not hold "the same job or responsibilities" as her proposed comparators. *West*, 960 F.3d at 740.

Moreover, to the extent that Bailey relies on discriminatory acts she experienced as an RN, she has not shown that her proffered comparators were in "nearly identical" circumstances or had "essentially comparable violation histories." *See Lee*, 574 F.3d at 260. First, she provides no information beyond stating that "the younger RNs like Sara, Tamara, and Arleda" were treated "much more favorably." (Dkt. No. 59-1 at 3). She does not even include their last names or ages[5] — let alone their violation histories or how those histories compare to her own. (*See* Dkt. Nos. 59, 59-1). Bailey has therefore failed to present evidence that any of her comparators were similarly situated to her or treated more favorably than her.

Second, Bailey points to KSM's decision not to fire Jennifer Baulch-Reed who allegedly committed a medical-administration error. (Dkt. No. 59-1 at 9). But KSM points out—and Bailey does not refute—that KSM determined after an investigation that Baulch-Reed had not committed an error at all.[6] (Dkt. No. 57 at 15). By contrast, Bailey

---

[5]    At one point, Bailey refers to "Tamara Balou." (Dkt. No. 59-1 at 7).

[6]    Baulch-Reed was investigated for administering a drug to a patient who was allergic to the drug. (Dkt. No. 57-2 at 2. 15–16). But KSM determined that this incident occurred because an

(continue)

did commit a "medication error"—a mistake that was ultimately corroborated by the Texas Board of Nursing.  (Dkt. No. 57-3 at 9, 13–15).  Accordingly, Bailey fails to show disparate treatment.

* * *

In sum, Bailey has not shown that KSM's legitimate, nondiscriminatory reasons for firing her were a pretext for age discrimination.  Accordingly, KSM is entitled to summary judgment on Bailey's age-discrimination claim.

## B. BAILEY'S RETALIATION CLAIM

The Court now addresses Bailey's retaliation claim.  Broadly speaking, the ADEA makes it unlawful "for an employer to discriminate, or retaliate, against an employee 'because such individual . . . has opposed any practice made unlawful by [the Act].'" *Heggemeier v. Caldwell County*, 826 F.3d 861, 869 (5th Cir. 2016) (per curiam) (quoting 29 U.S.C. § 623(d)).  Like age discrimination, retaliation claims under the ADEA apply the *McDonnell Douglas* burden-shifting framework.  *Id.*  The Court will thus determine whether (1) Bailey has made a prima facie case of retaliation; (2) KSM's proffered reasons are legitimate and nondiscriminatory; and (3) KSM's reasons were a pretext for retaliation.

### 1. Bailey's Prima Facie Case of Retaliation

"To state a prima facie retaliation claim under the ADEA, a plaintiff must show '(1) that he engaged in a protected activity, (2) that there was an adverse

---

anesthesiologist caught an alert for the allergy in the system, overrode the alert after deeming it low-risk, and instructed Baulch-Reed to administer the drug.  (*Id.*).

employment action, and (3) that a causal link existed between the protected activity and the adverse employment action.'" *Id.* (quoting *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001)).  A plaintiff must also prove that she was qualified for the position.[7]

Here, the only disputed element of Bailey's prima facie case is whether there was a causal link between her EEOC charge and her termination.  "[A] causal link 'is established when the evidence demonstrates that the employer's decision to terminate was based in part on knowledge of the employee's protected activity.'" *January v. City of Huntsville*, 74 F.4th 646, 653 (5th Cir. 2023) (quoting *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 349 (5th Cir. 2019)).  At the prima facie stage, this causal link may "be established simply by showing close enough timing between the two events." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019).

KSM learned of Bailey's EEOC charge on January 11, 2019.  (Dkt. No. 59 at 18). Bailey was fired less than two months later, on March 8, 2019.  (*Id.*); (Dkt. No. 57-3 at 12). The Fifth Circuit has "repeatedly held periods of a few months sufficient to satisfy causation in a prima facie case." *January*, 74 F.4th at 653 (emphasis omitted); *see, e.g., id.*

---

[7]    The Fifth Circuit has explained that "*Holtzclaw* unequivocally added a fourth element to the claim." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497 (5th Cir. 2015).  But the Fifth Circuit also observed that the Supreme Court has since cast doubt on the reasoning in *Holtzclaw*, and the Fifth Circuit has not consistently required this fourth element.  *Id.* at 497 n.2 (collecting cases); *see, e.g., Heggemeier*, 826 F.3d at 869 (relying on *Holtzclaw* yet omitting the fourth element). While *Wooten* left the viability of the fourth element unresolved, *see Wooten*, 788 F.3d at 497 n.2, this Court remains bound by *Holtzclaw* because it is controlling precedent and has not been expressly overruled, *see, e.g., Allen*, 63 F.4th at 305 (reciting the fourth element).  In any case, the Parties do not dispute Bailey's qualifications as an RN.  (*See* Dkt. Nos. 57, 59).

(holding that a six-week gap "does the trick"); *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016) (holding that a period of roughly two months was sufficient); *Allen*, 63 F.4th at 305 (same for seven-week period); *Richardson v. Prairie Opportunity, Inc.*, 470 F.App'x 282, 287 (5th Cir. 2012) (per curiam) (same for period that was less than two months).  Bailey has therefore established a prima facie case of retaliation.

### 2.    KSM's Legitimate, Nondiscriminatory Reasons

Because Bailey has established her prima facie case of retaliation, the burden shifts to KSM to articulate a legitimate, nondiscriminatory reason for her termination.  KSM relies on the same reasons articulated for the age-discrimination claim discussed above. *See supra* Section III(A)(2).  And as with the age-discrimination claim, Bailey does not dispute that KSM has "articulated a non-discriminatory reason."  (Dkt. No. 59 at 16). Accordingly, KSM's proffered reasons for terminating Bailey were legitimate and nondiscriminatory.

### 3.    Pretext for Retaliation

At the pretext stage, "temporal proximity standing alone is insufficient to establish an issue of fact as to pretext."  *January*, 74 F.4th at 654 (quoting *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 487 (5th Cir. 2008)).  "The standard for proving causation at the pretext stage is more stringent than at the prima facie stage."  *Donnelly v. Acad. P'ships, LLC*, No. 23-10724, 2024 WL 1877043, at *5 (5th Cir. Apr. 30, 2024) (per curiam).  The plaintiff at the pretext stage must show that the adverse employment action would not have occurred "but for" the employee's participation in the protected activity.  *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir. 1994).  A plaintiff must specifically

prove "that her discharge was more likely based on retaliation for her complaints of illegal discrimination, and not caused by her" performance issues. *Id*. This normally requires "evidence that the ultimate decisionmaker harbored retaliatory animus towards the plaintiff." *Donnelly*, 2024 WL 1877043, at *5. A plaintiff can also demonstrate pretext by showing that the reasons given for the adverse employment action were "shifting and inconsistent." *January*, 74 F.4th at 655.

Bailey asserts that there is substantial evidence of pretext because her EEOC charge specifically targeted Barron, who spearheaded the investigation into the second medical-administration error that led to her termination. (*See* Dkt. No. 59 at 19). The Court disagrees. KSM notes—and Bailey does not dispute—that the investigation "included interviewing five different staff witnesses and the physician." (Dkt. No. 57 at 20). Additionally, the investigation was not just conducted by Barron, but by another manager as well. (Dkt. No. 57-4 at 30); (Dkt. No. 59-12 at 111). Moreover, the Texas Board of Nursing expressly found that Bailey committed the error and that, in so doing, she violated Texas state law. (Dkt. No. 57-3 at 13–15). And outside of the conclusory allegations in her declaration, (*see* Dkt. No. 59-1), Bailey offers no evidence that Barron—or anyone else at KSM—harbored retaliatory animus. Nor has she offered anything to question the legitimacy of the process, such as a "departure from typical policies and procedures," *Feist v. La., Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454–55 (5th Cir. 2013), or "shifting and inconsistent" justifications, *January*, 74 F.4th at 655. There is thus "no evidence that would support a reasonable jury finding of retaliatory motive without

engaging in impermissible speculation." *Grizzle*, 14 F.3d at 267–68. Accordingly, KSM is entitled to judgment as a matter of law on Bailey's retaliation claim.

## IV.    CONCLUSION

For the above reasons, Defendant KS Management Services, LLC's Motion for Summary Judgment, (Dkt. No. 57), is **GRANTED**. Plaintiff Dana Bailey's age-discrimination and retaliation claims are hereby **DISMISSED WITH PREJUDICE**.

It is SO ORDERED.

Signed on March 17, 2025.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**